TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY ET AL. *v.* HICKEY, ADMINISTRATOR.

[No. 9,734. Filed October 7, 1919. Rehearing denied January 30, 1920.]

1. MASTER AND SERVANT.—*Injuries to Servant.*—*Action.*—*Complaint.*—*Sufficiency.*—In an action against a traction company and a telephone company for the death of the latter company's employe, who was electrocuted while climbing a telephone pole to which the traction company had attached an uninsulated high-tension wire, complaint *held* to state a cause of action against

the telephone company as showing that it had full knowledge of the danger resulting from the act of the traction company and that it negligently permitted the high-tension wire to remain upon its pole.  p. 427.

2.  MASTER AND SERVANT.—*Injuries to Servant.—Action.—Verdict for Plaintiff.—Evidence.—Sufficiency.*—In an action against a traction company and a telephone company for the death of the latter company's employe, who was electrocuted while climbing a pole to which the traction company had attached an uninsulated high-tension wire, evidence *held* sufficient to sustain the jury's finding that each of the defendants were guilty of negligence resulting in decedent's death, and that decedent was free from contributory negligence.  p. 429.

3.  MASTER AND SERVANT.—*Injuries to Servant.—Action.—Evidence.—Admissibility.*—In an action for wrongful death, a complaint alleging that defendant telephone company's employe was electrocuted by contact with the uninsulated high-tension wire of defendant traction company, whose wire was attached to the telephone company's pole, *held* to warrant the admission of testimony that decedent was killed through grounding by contact with the wires belonging to both companies, including the telephone cable and messenger wire.  pp. 430, 431, 432.

4.  APPEAL.—*Review.—Admission of Evidence.—Failure to Object.—Voluntary Statement of Witness.*—Where a witness, in addition to his answer to a question, made a voluntary statement which was not in response to such question, and appellant failed to move to have such statement stricken out or to make any objection to it, error cannot be predicated on the admission of such testimony.  p. 431.

5.  EVIDENCE.—*Judicial Notice.—"Ground."—Death by Electrocution.*—Where a telephone company employe came into contact with uninsulated live wires while working on a wooden telephone pole and was electrocuted, the court judicially knows that there must have been a ground connection.  p. 432.

6.  APPEAL.—*Review.—Cross-Examination of Witness.*—In an action against a traction company and a telephone company for the death of an employe of the latter company, who was electrocuted by coming in contact with an uninsulated high-tension wire which the traction company had attached to a telephone pole upon which decedent was working, cross-examination of an expert called by defendants as to the proper construction of pole connections and as to whether the location of the traction company's wires in relation to the other wires carried on the pole was considered good construction practice, *held* proper in view of other facts developed by the evidence.  p. 433.

Terre Haute, etc., Traction Co. *v.* Hickey, Admr.—72 Ind. App. 423.

7. TRIAL.—*Reception of Evidence.—Rebuttal Evidence.*—In an action for wrongful death against a telephone company and a traction company which had attached an uninsulated high-tension wire to a pole belonging to the telephone company, where the claim that it was impracticable to insulate the high-tension wire was first made by defendants when they introduced their evidence, testimony that insulation was practicable was properly received in rebuttal as against the objection that it was evidence in chief. p. 434.

8. APPEAL.—*Review.—Refusal of Instructions.*—It is not error to refuse requested instructions where they are covered by those given. p. 435.

From Vermillion Circuit Court; *Barton S. Aikman,* Judge.

Action by Nicholas Hickey, administrator of the estate of William P. Smith, deceased, against the Terre Haute, Indianapolis and Eastern Traction Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*McNutt, Wallace, Sanders & Randel, Conley & Conley, C. S. Batt* and *W. S. Danner,* for appellants.

*Hamill, Hickey & Evans* and *Homer Aikman,* for appellee.

McMAHAN, J.—Appellee, as administrator of the estate of William P. Smith, prosecutes this action under §285 Burns 1914, Acts 1899 p. 405, against appellants, Terre Haute, Indianapolis and Eastern Traction Company and the Citizens Independent Telephone Company, to recover damages on account of the death of said decedent.

The complaint is in two paragraphs. The gist of each paragraph is that the traction company negligently attached an uninsulated high-tension wire with an uninsulated tie wire to a telephone pole belonging to the telephone company, and, with knowledge of its

condition, negligently maintained said wire in that condition and position; that the telephone company, with full knowledge of the dangerous position and condition of said wires, negligently permitted and allowed it to be and remain in that position and condition and required and directed said decedent to climb said pole for the purpose of removing some telephone wires that were attached to said pole above the wire of the traction company, and that said decedent, while climbing said pole in the performance of his duty and in the line of his employment, without any fault or negligence on his part, and without any knowledge of the defective condition of said wires, came in contact with said wires of the traction company, and thereby was killed by reason of the alleged negligence of the appellants, and that the telephone company negligently failed to furnish him with a safe working place.

The appellants filed separate and several demurrers for want of facts to each paragraph of the complaint, which were overruled and separate exceptions saved. There was a trial by jury, which resulted in a verdict and judgment in favor of appellee. The telephone company filed a motion for a new trial, containing over ninety specifications or reasons for a new trial, to wit, that the verdict is not sustained by sufficient evidence, is contrary to law, and that the court erred in giving and in refusing to give certain instructions and in admitting and refusing to strike out certain evidence. The traction company also filed a motion for a new trial, containing nearly eighty specifications, and to the effect that the verdict of the jury is not sustained by sufficient evidence and is contrary to law; that the court erred in refusing to give certain instructions and in admitting certain

evidence. Both motions were overruled. Appellants assign errors separately.

The errors assigned by the telephone company are that the court erred (1) in overruling its demurrer to each paragraph of the complaint; and (2) in overruling its motion for a new trial. The only error assigned by the traction company is the overruling of its motion for a new trial.

The telephone company contends that neither paragraph of the complaint states facts showing that it
1. was guilty of any negligence which proximately caused the death of the decedent, or showing any defect or danger in the working place of decedent which was the result of want of ordinary care on the part of the telephone company; that the decedent assumed the risk of the injuries complained of, and that the decedent was guilty of contributory negligence. It also contends that the complaint fails to state facts showing the existence of an unsafe working place, in that it fails to state facts showing any possibility of an employe being grounded when coming in contact with the alleged uninsulated wires of the traction company, on the theory that the court will take judicial notice that there is no danger in coming in contact with an uninsulated wire, unless the person so coming in contact with such wire also comes in contact with the ground or some conductor leading thereto; that the complaint does not show that the defect or danger complained of was the result of a want of ordinary care on the part of the telephone company, or that the telephone company had any right or authority to remove the alleged defective wire belonging to the traction company, or to remedy the alleged defects.

The complaint is quite lengthy, and we do not deem it necessary to enter into a lengthy discussion as to its sufficiency, or to set it out in detail. The facts concerning the location and character of the wires owned and maintained by each of the appellants, the want of insulation, and the danger resulting therefrom are set out at great length and minutely. It is alleged that both appellants for more than four months knew of the dangerous character and condition of said wires of the traction company, and that each of them was negligent in permitting them to remain in that condition; that the telephone company was negligent in requiring the decedent to do the work that he was doing at the time of his injury; that the decedent was killed by reason of coming in contact with the alleged uninsulated wires of the traction company, and that the defects as alleged, and the danger to the employes of the telephone company was brought about because of the negligence of both appellants; that the decedent had no knowledge of the defects and dangerous situation which caused his death.

With these allegations in the complaint, it is clear to us that the complaint does state facts sufficient to show that both appellants were guilty of negligence. The telephone company was the owner of the pole to which the alleged defective and dangerous wires of the traction company were attached, and as such owner had the unquestioned right and authority to remove or cause the said wires to be removed. The facts stated in the complaint do not make out a case where an intervening and responsible agent cuts off the line of causation from the ordinary act of negligence, so as to relieve the telephone company

NOVEMBER TERM, 1919.          429

Terre Haute, etc., Traction Co. *v.* Hickey, Admr.—72 Ind. App. 423.

from responsibility. The intervening act of the traction company was not an unforeseen or unanticipated act. It was an act and situation of which the telephone company had full knowledge. The rule applicable to intervening acts of others is not applicable here. *Nickey* v. *Steuder* (1905), 164 Ind. 189, 73 N. E. 117. Neither paragraph of the complaint is subject to the objections pointed out. There was no error in overruling the demurrer thereto.

Passing next to the contention of the telephone company that the verdict is not sustained by sufficient evidence. The evidence shows that each

2.  of the appellants owned and maintained the wires as alleged in the complaint; that the primary or high-tension wire owned by the traction company was attached to a pole belonging to the telephone company by an uninsulated tie wire. The said primary wire at that place was uninsulated and it and said tie wire carried 2,300 voltage; that the decedent, in performing the work required of him, had to climb the pole to which said primary wire was attached, and in so doing was compelled to pass said primary wire, and that in so doing he came in contact with said primary wire or the tie wire, and in some manner became grounded and was killed thereby. The evidence disclosed that the telephone company had a cable in which there were inclosed 600 telephone wires. This cable was two inches below and attached to a steel messenger wire, both of which were grounded, so that any person coming in contact with said primary wire, or said tie wire, belonging to the traction company, and said cable or messenger wire owned by the telephone company, would receive a shock which would result in death. The pole in question was cedar, and when dry and sound was a non-

conductor of electricity, but that such poles when wet, or if decayed and soggy on the inside, were conductors of electricity. There was some evidence that the pole was wet and soggy on the inside. The evidence shows without any controversy that when the decedent was climbing said pole and passing the wires of the traction company, or just as he was beginning to work, he received a current of electricity which caused his death. The evidence amply supported the allegations of the complaint that the decedent received a current of electricity from the uninsulated wire of the traction company, while he was on the pole; that some ground connection was made between the uninsulated wire and some conductor of electricity. This conductor might have been the pole, the cable, the messenger, or all three combined. The uninsulated wire of the traction company had been attached to the pole of the telephone company in the manner hereinbefore described for nearly a year before the time of the accident. The jury by its verdict found that the decedent was not guilty of contributory negligence, and that each of the appellants was guilty of negligence, and that decedent's death was the result of such negligence. There was ample evidence to justify the jury in so finding.

Both of the appellants contend that the court erred in permitting the witness Earl F. Brown to testify that the messenger and cable were grounded.

3.    This witness had testified concerning the location of the pole and wires of both appellants, stating that a large number of telephone wires were above the primary wire of the traction company; that there were a number of wires belonging to the traction company, passing along and near this pole, and not attached thereto; that one of the primary

wires of the traction company was attached to this pole, and that about four feet below this primary wire of the traction company, the telephone, cable and messenger wire were also attached to this pole, and that a person, in order to reach the topmost wires of the telephone company, would be compelled to pass the cable and messenger wire, and the primary wire of the traction company, and in close proximity thereto; and that, if the decedent had touched the uninsulated primary wire or the tie wire of the traction company with his hand or arm, and at the same time had touched or stepped on the cable, it would have killed him. The witness was then asked whether the messenger wire was grounded, to which the witness answered, "It was grounded. Yes sir, the cable and messenger was grounded." No question was asked the witness as to whether the cable was grounded. That part of the answer stating that the cable was grounded was not in response to the question, and was a voluntary statement. Neither of the appellants asked to have this stricken out, or made any objection to it. The specification and motion for a new trial is that the court erred in permitting the witness to testify that "the messenger and cable were grounded." There being no objection or exception to the witness testifying that the cable was grounded, no error is shown, nor do we think there was any error in permitting the witness to testify that the messenger wire was grounded. The complaint alleged that there were a great number of telephone wires attached to the pole in question; that the wires of the traction company attached to this pole were dangerous and deadly to any person coming in contact with any of said wires, and that a person coming

in contact with said high-tension wire of the traction company where uninsulated, or with the tie wire, would receive an electric shock therefrom and be liable to be killed thereby. There was no specific allegation in the complaint limiting the manner by which the decedent was grounded to the contact with the pole and the wires of the traction company. It was within the purview of the complaint to show that, while the decedent was on the telephone pole, he came in contact not only with the wires of the traction company, but also with the wires of the telephone company, including the cable and messenger wire, and through such contact became grounded and was killed. The complaint specifically alleges that "while he was upon said pole and while acting in the line of duty, his left arm came in contact with said lower wire where not insulated or with the tie wire." In order that this contact might produce death, as is alleged, we know judicially that there must have been a "ground." The complaint alleged specifically that by reason of the decedent coming in contact with this primary wire, or the tie wire, he was killed. This implies that there was a connection with the ground and that decedent came in contact with the ground connection. The complaint does not necessarily allege that the pole formed a connection, or the only connection with the ground. If appellants, or either of them, desired to have the manner or way by which the decedent was grounded stated more fully, they should have filed a motion to make the complaint more specific in that regard.

Prof. Wagner was called by appellants as an expert. On direct examination, he testified as to the

method of insulating electrical wires, stating 6. that the standard covering for wire commonly used for 2,300 volt circuits, like the one used by the traction company, is weatherproof covering of three thicknesses of cotton braiding soaked in some compound to keep out moisture; that the standard way of fastening such wires to an insulator is by placing them in the groove around the insulator and then fastening it by another insulated wire of the same size passing around the insulator; that this covering is not generally relied upon for insulation purposes; that if a person came in contact with a dry cedar pole, and had no other contact, except when he came in contact with the wire carrying 2,300 volts of electricity, he would not have been in any danger of a shock from coming in contact with such wire; that if a person in climbing the pole in question had stepped upon the messenger wire, and his hand had come in contact with the tie wire, such person would perhaps have received a fatal shock, and the same result would probably be true, even though the primary wire and the tie wire were both covered with standard covering. He also testified that it was a common practice, where but one or two wires are placed on a pole, to use brackets instead of cross-arms, and that such was a proper construction. Counsel for appellee on cross-examination at this point assumed a state of facts as existing, and asked whether or not that was the proper way of fastening the primary wire to the pole. The appellant objected to the question for the reason that the assumed facts were not in accordance with the evidence, and that it was not proper cross-examination. The witness answered: "I should consider that it would not be very good practice to place a grounded messenger wire within a reaching distance

of a high tension wire, even though the high tension wire were insulated.'' The evidence of this witness on direct examination, as well as on cross-examination, tended to leave the impression that the wires of the traction company were properly attached to the telephone pole; that there was no negligence in attaching and leaving these uninsulated wires so attached to the telephone pole, and that a person ascending the telephone pole was not in any danger of being shocked or injured by reason of such uninsulated wires. It was clearly proper on cross-examination to inquire as to whether or not he considered the manner and location of the traction company's wires proper, in view of the facts proved in the case, as was the purpose of the questions asked.

It is also contended that the court erred in permitting the witnesses Hannaberry, Venable and Brown to testify that a wire the size of the primary 7. wire of the traction company, carrying 2,300 volts of electricity, could be insulated with a standard triple-braid weatherproof insulation, so that a person coming in contact with such wire, when so covered and when he was grounded, would not be injured. The objection made to the question was that it was evidence in chief, and not in rebuttal. We do not so view it. The question as to the impracticability of insulation was raised for the first time by the appellants when they introduced their evidence.

Appellee had proved that the wire was not insulated where the tie wire was attached. Appellants then undertook to show that it made no difference whether the wires of the traction company were insulated or not, and that, even though insulated, the result would have been the same. It was certainly proper for appellee to rebut this evidence.

Both of the appellants contend that the court erred in refusing to give certain instructions. The telephone company tendered forty-six instructions, 8. twenty-two of which were given. The traction company tendered forty-nine instructions, thirty-eight of which were given. The court, on request of appellee, gave nine instructions. It is not necessary for us to set out even the substance of the instructions given or those refused. We have carefully examined all of them. Some of the instructions refused were not applicable to the evidence, or did not state the law correctly, while those that stated the law correctly were fully covered by instructions given. The court by its instructions fully covered every phase of the case. If any complaint can be made of the instructions, it is that they were more favorable to appellants than they should have been.

The telephone company contends that the court erred in giving instruction No. 10, requested by the appellee, relative to actual and constructive notice. This instruction contains a correct statement of the law, and is not subject to the objections urged against it. We have examined all points presented by both appellants, and find no reversible error in the record.

Judgment affirmed.